IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DREW HESTER,

       Plaintiff,

v.

OSAGE LANDFILL, INC., a domestic
for profit business corporation,

       Defendant.

Case No. 23-CV-00341-GKF-MTS

**OPINION AND ORDER**

    This matter comes before the court on the Motion to Dismiss of defendant Osage Landfill, Inc. [Doc. 6]. For the reasons set forth below, the motion is granted in part and denied in part.

    **I.**    **Procedural Background and Factual Allegations**

    Plaintiff Drew Hester filed a petition [Doc. 2-1] and first amended petition [Doc. 2-5] in the District Court of Osage County, Oklahoma. Defendant Osage Landfill, Inc. removed the case to this court on August 10, 2023.[1] [Doc. 2]. In his amended complaint,[2] Mr. Hester alleges Osage Landfill hired him in July 2019. [Doc. 2-5, p. 2, ¶ 11]. After Mr. Hester experienced chest pains and shortness of breath on November 17, 2020, Osage Landfill directed him to visit an urgent care clinic. [*Id.*, ¶ 12]. At the urgent care clinic, Mr. Hester learned his blood pressure was high and he was referred to the emergency room for more tests. [*Id.*]. Mr. Hester then visited a cardiologist, who would not release him back to work because of elevated blood pressure. [*Id.*, ¶ 13]. Osage

---

[1] Mr. Hester's first amended petition named Waste Connections, Inc. and Osage Landfill, Inc. as defendants. After Mr. Hester stipulated that Osage was the proper party defendant, the court dismissed Waste Connections, Inc. from the suit. [Doc. 15].

[2] For consistency with the Federal Rules of Civil Procedure, the court refers to the first amended petition as the amended complaint.

Landfill then placed Mr. Hester on leave under the Family and Medical Leave Act (FMLA) for twelve weeks.  [*Id.*, ¶ 14].

After twelve weeks, Mr. Hester was not medically released to return to work.  [*Id.*, pp. 2-3, ¶ 14].  Mr. Hester alleges his supervisor called and pressured him to resign because Mr. Hester's inability to return to work put the supervisor "in a bind." [*Id.*].  When Mr. Hester refused to resign, Osage Landfill terminated him on February 23, 2021.  [*Id.*, p. 3, ¶ 15].  Mr. Hester alleges that, instead of terminating him, Osage Landfill should have provided a reasonable accommodation in the form of light duty or additional medical leave so that he could get his blood pressure under control.  [*Id.*, ¶ 18].  On these facts, Mr. Hester asserts three claims: 1) disability discrimination in violation of the Americans with Disabilities Act (ADA),[3] 42 U.S.C. § 12101, *et seq.*; 2) retaliation in violation of the ADA; and 3) retaliation and interference in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. 2601, *et seq*.

Mr. Hester asserts a fourth claim for violation of the statutory notice requirements governing group health plans under the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161, *et seq*.  Mr. Hester alleges Osage Landfill failed to provide the notice required by COBRA.  [Doc. 2-5, p. 6, ¶ 38].  As a result, he incurred significant medical expenses that would have been covered by insurance had he received this notice required under COBRA.  [*Id.*].

Osage Landfill moves to dismiss Mr. Hester's amended complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[3] As amended by the ADA Amendment Act of 2008.

II.     **Analysis**

    A. **Rule 12(b)(6) Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). When determining whether a complaint states a plausible claim for relief, a "reviewing court may draw on its judicial experience and common sense." *Id*. at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court accepts as true all factual allegations, but that tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

    B. **Mr. Hester's ADA Claims**

        *1. Timeliness of the ADA Claims*

Osage Landfill contends Mr. Hester's ADA claims must be dismissed because he fails to allege his suit was timely filed. Under the ADA, which adopts Title VII's administrative exhaustion requirements, a plaintiff is required to file a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and file suit within ninety days of receiving a Right to Sue Letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1) and 42 U.S.C. § 12117(a).

Mr. Hester alleges he submitted a formal Charge of Discrimination on October 12, 2017. [Doc. 2-5, p. 3, ¶ 19]. As the events at issue here occurred in 2020 and 2021, this allegation is facially impossible. Mr. Hester further alleges the EEOC issued its Right to Sue Letter on June

29, 2021. [*Id*., ¶ 20]. Because Mr. Hester filed his initial pleading on October 18, 2022 [Doc. 2-2], Osage Landfill argues the action is time-barred because it was filed outside the ninety-day limitations period. In his response brief, Mr. Hester concedes the dates alleged are incorrect and asserts instead that he submitted his Charge of Discrimination on or about June 26, 2021,[4] and received a Right to Sue letter dated July 20, 2022. [Doc. 8, p. 2]. Mr. Hester attaches his Charge of Discrimination and the Right to Sue Letter as exhibits to his response [Doc. 8-1, pp. 2-4] and, relying on these materials, argues he timely filed suit on October 18, 2022.

Mr. Hester may not effectively amend his amended complaint by alleging new facts in his response to the motion to dismiss. *See Earles v. Cleveland*, 418 F.Supp.3d 879, 892 n. 3 (W.D.Okla. 2019). As currently alleged, Mr. Hester's ADA claims are untimely and shall be dismissed without prejudice. He may file a Second Amended Complaint correcting his errors on or before January 19, 2024.

### 2. *The First Claim for Relief (ADA Discrimination)*

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "disability" includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). This definition is to be broadly construed. 42 U.S.C. § 12102(4)(A). A "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

---

[4] Though Mr. Hester states in his response that he submitted his Charge of Discrimination on June 26, 2021, the charge he attached to his response is dated June 28, 2021, two days later.

To state a claim for disability discrimination under the ADA, Mr. Hester must allege: "(1) he is disabled as defined under ADA; (2) he is qualified, with or without reasonable accommodation by [the defendant] to perform the essential functions of the job; and (3) he was discriminated against because of his disability." *Blakely v. Cessna Aircraft Co.*, 256 F.Supp.3d 1169, 1173 (D.Kan. 2017) (citing *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016)).

With respect to the first element, Osage Landfill argues Mr. Hester does not plausibly allege he was disabled under the ADA because he alleges no facts to indicate his "elevated blood pressure" affected a major life activity. However, the ADA identifies "working" as a major life activity. 42 U.S.C. § 12102(2)(A). Mr. Hester alleges his cardiologist would not release him for work due to his elevated blood pressure and that he was put on FMLA leave for twelve weeks because of this condition. Therefore, Mr. Hester plausibly alleges he was disabled due to his elevated blood pressure.

With respect to the third element, ADA discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual…" 42 U.S.C. § 12112(b)(5)(A). To this end, ADA regulations provide that it may be necessary for employers "to initiate an informal, interactive process with the individual with a disability in need of accommodation…to identify the precise limitations resulting from the disability and potential reasonable accommodations." 29 C.F.R. § 1630.2(o)(3). This interactive process "must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations, and expressing a desire for reassignment if no reasonable accommodation is possible in the employee's existing job." *Smith v. Midland Brake, Inc.*, 180 F.Supp.3d 1154, 1171-72 (10th Cir. 1999). *See also Herrmann v. Salt Lake City Corp.*,

21 F.4th 666, 674 (10th Cir. 2021). When expressing a desire for reassignment, an employee is not required to use any magic words, but "the employee must convey to the employer a desire to remain with the company despite his or her disability and limitations." *Smith v. Midland Brake, Inc.* at 1172.

Mr. Hester argues Osage Landfill discriminated against him by failing "to engage in an interactive process to provide Plaintiff an accommodation, which could include light duty, intermittent leave, and/or reassignment." [Doc. 8, p. 2]. However, beyond conclusory statements and a recitation of elements, the amended complaint fails to allege any substantive facts to support an inference that Mr. Hester initiated the interactive process by requesting an accommodation or reassignment. Further, the allegations in the amended complaint fail to provide a plausible inference that Mr. Hester was ever a candidate for light duty, intermittent leave, or reassignment. He alleges only that his cardiologist would not release him to return to work following expiration of his FMLA leave and that he refused to resign. These allegations provide no indication that Mr. Hester was "an otherwise qualified individual" for the job held or desired. Mr. Hester offers no allegations that he ever communicated a request for reassignment, that he could perform the duties of any reassigned position, that he had a medical release to perform a reassignment, or that a reassignment was available at Osage Landfill following expiration of his FMLA leave. Therefore, Mr. Hester fails to plausibly allege that Osage Landfill discriminated against him by failing to engage in the interactive process.

Alternatively, relying on *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955 (10th Cir. 2002), Mr. Hester argues he was entitled to reinstatement and accommodation, in the form of additional leave, after exhausting his FMLA leave. However, the facts of *Smith* are not analogous to those presented here. In *Smith*, the plaintiff was terminated prior to exhausting her twelve weeks

6

of FMLA leave. *Id*. at 959. While *Smith* recognized that "limited leave for medical treatment may qualify as reasonable accommodation under the ADA," the Tenth Circuit overturned the district court's grant of summary judgment for defendant on the plaintiff's ADA claim partly on the basis that the plaintiff "had requested and taken no more leave than the FMLA already required that she be given." *Id*. at 967.

In contrast, Mr. Hester alleges he fully exhausted the FMLA leave to which he was entitled at the time of his termination from Osage Landfill. His allegations fail to support his contention that he was entitled to additional leave. Therefore, because his allegations fail to state a claim for ADA discrimination, Mr. Hester's first claim for relief is dismissed without prejudice.

### 3. The Second Claim for Relief (ADA Retaliation)

Mr. Hester's second claim is one for ADA retaliation. The ADA prohibits discrimination against any person for opposing "any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). In response to the motion to dismiss, Mr. Hester fails to substantively address Osage Landfill's argument that he failed to state a plausible claim for ADA retaliation. Thus, it appears that plaintiff may have abandoned his claim for ADA retaliation. *Tronsgard v. FBL Financial Group, Inc.*, 312 F.Supp.3d 982, 1009 (D. Kan. 2018) (citing *Hinsdale v. City of Liberal, Kan.*, 19 Fed.Appx. 749, 768-69 (10th Cir. 2001)).

### C. The Third Claim for Relief (FMLA Retaliation and Interference)

"The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave, without fear of termination … [for] a serious health condition." *Dewitt v. Southwestern Bell Telephone Company*, 845 F.3d 1299, 1318 (10th Cir. 2017) (internal quotation omitted). S*ee also* 29 U.S.C. § 2612(a)(1)(D). It is unlawful for an employer to retaliate against an employee for

7

taking FMLA leave. *Id*. *See also* 29 U.S.C. § 2615(a). An employee who takes leave under the FMLA is entitled, upon their return from leave, to be restored to the position held by the employee when the leave commenced or to be restored to an equivalent position with equivalent pay and benefits. 29 U.S.C. § 2614(a)(1). In his third claim for relief, Mr. Hester alleges that by terminating him at the end of his FMLA leave, Osage Landfill interfered with his right to FMLA leave and retaliated against him in violation of the FMLA.

### 1. *FMLA Interference*

To plead a prima facie case of FMLA interference, a plaintiff must allege: "(1) [he] was entitled to FMLA leave; (2) that an adverse action by the employer interfered with [his] right to take FMLA leave; and (3) that the employer's adverse action was related to the exercise or attempted exercise of [his] FMLA rights." *Speight v. Sonic Restaurants, Inc.*, 983 F.Supp.2d 1324, 1328 (D. Kan. 2013). "The second element of the interference claim requires the employee to allege that '[he] was prevented from taking the full 12 weeks' of [sic] leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave.'" *Id*. (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

Here, Mr. Hester has failed to plausibly allege that Osage Landfill denied, restrained, or otherwise interfered with his entitlement to take FMLA leave. Rather, plaintiff alleges that he exhausted his twelve weeks of FMLA leave, but "he still didn't have a medical release to go back to work." [¶ 14, Amended Complaint]. The FMLA permits terminations under such circumstances. *McClelland v. CommunityCare HMO, Inc.*, 503 Fed.Appx. 655, 659 (10th Cir. 2012) (unpublished) (relying on 29 U.S.C. § 2614(a)(3)(B)).[5] After expiration of his FMLA leave, Mr. Hester's "entitlement to leave and reinstatement depended on the leave benefits accorded to

---

[5] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. Rule 32.1.

8

him under the terms of his employment with [Osage Landfill] rather than the leave guaranteed under the FMLA." *Glover v. DCP Midstream GP, LLC*, 549 Fed.Appx 713, 715 (10th Cir. 2013) (unpublished). Mr. Hester alleges he was terminated because his not being able to come back to work put his boss "in a bind," but offers no authority in his brief to support entitlement to additional FMLA leave. Because Mr. Hester alleges he received all twelve weeks to which he was entitled under the FMLA, and that he was unable to return to work at the end of his leave, he fails to state a claim for FMLA interference. Mr. Hester's FMLA interference claim is therefore dismissed with prejudice.

*2. FMLA Retaliation*

Mr. Hester's response brief does not address Osage Landfill's contention that he failed to state a plausible claim for FMLA retaliation. Because plaintiff does not respond to defendant's argument, the court concludes that plaintiff has abandoned his claim for FMLA retaliation. *Tronsgard v. FBL Financial Group, Inc.*, 312 F.Supp.3d 982, 1009 (D. Kan. 2018) (citing *Hinsdale v. City of Liberal, Kan.*, 19 Fed.Appx. 749, 768-69 (10th Cir. 2001)).

Alternatively, plaintiff has failed to state a claim for FMLA retaliation. In contrast to a claim for FMLA interference, "a retaliation claim may be brought when the employee took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287-88 (10th Cir. 2007). *See also Dalpaiz v. Carbon County, Utah*, 760 F.3d 1126, 1132 n. 3 (10th Cir. 2014). Here, Mr. Hester does not allege he was restored to his prior employment status at Osage Landfill or that he experienced an adverse employment action following his return to work. His FMLA retaliation claim is therefore dismissed with prejudice.

### D. The Fourth Claim for Relief (COBRA Violation)[6]

In his fourth claim, Mr. Hester alleges Osage Landfill violated the COBRA continuation rules by failing to give notice of his entitlement to elect continuation of his health coverage. COBRA requires employers to provide employees an opportunity to elect continuation of coverage under a group health plan upon the occurrence of a qualifying event. 29 U.S.C. § 1161(a). The term "group health plan" means "an employee welfare benefit plan providing medical care…to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C. § 1167(1). A qualifying event under COBRA includes the "termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." 29 U.S.C. § 1163(2). The employer must notify the plan administrator within thirty days of the qualifying event, and the administrator must then notify "any qualified beneficiary" of his COBRA rights within fourteen days. 29 U.S.C. §§ 1166(a)(2) and 1166(c). The term "qualified beneficiary" includes terminated employees who were provided coverage under a group health plan. 29 U.S.C. § 1167(3)(B).

Taking Mr. Hester's allegations as true, as it must, the court may reasonably infer that Osage sponsored a health plan in which Mr. Hester was a participant. This is supported by Mr. Hester's allegation that Osage Landfill offered a group health plan within the meaning of the COBRA statutes [Doc. 2-5, p. 6, ¶ 35] and that his medical bills would have been covered by insurance had he received a COBRA notice from Osage Landfill upon his termination [*Id*., p. 3, ¶ 16]. As such, the court finds Mr. Hester has plausibly alleged he participated in a group health plan offered by Osage Landfill and was entitled to notice of his right to continue any coverage under this plan upon his termination. Because Mr. Hester alleges he did not receive a continuation

---

[6] The amended complaint incorrectly identifies this claim as his third claim for relief.

10

notice, he therefore states a plausible claim for relief under COBRA. Osage Landfill's motion to dismiss the Fourth Claim for Relief is denied.[7]

### E. Request for Leave to Amend

Mr. Hester requests leave to amend his amended complaint if it is found to be insufficient. A court "should refuse leave to amend 'only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (quoting *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 137 F.3d 1300, 1315 (10th Cir. 2005)). "[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (quoting 6 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1483, at 587 (2d ed. 1990)).

Although Mr. Hester previously amended his original pleading, the amendment occurred prior to service of the suit on Osage Landfill and removal to this court. Under the liberal standards guiding requests for leave to amend, the court grants Mr. Hester's request in part, as it may be possible for him to state plausible ADA discrimination and retaliation claims. However, this court concludes plaintiff has abandoned his FMLA retaliation claim, and it is not possible for plaintiff to state plausible claims for FMLA interference and FMLA retaliation. The request to amend those claims is denied.

---

[7] Plaintiff also alleges that Osage Landfill failed to inform him that "his health insurance would not be paid when he was on FMLA leave." [¶ 16, Amended Complaint]. It appears that there may be some confusion as to the law, as the court has found no authority for the proposition that FMLA leave is a qualifying event under COBRA. If so, plaintiff is encouraged to eliminate the confusion in the Second Amended Complaint.

### III. Conclusion

WHEREFORE, the motion to dismiss of defendant Osage Landfill [Doc. 6] is granted in part and denied in part. The motion to dismiss the first claim for relief (ADA discrimination) and second claim for relief (ADA retaliation) is granted, without prejudice. The motion to dismiss the third claim for relief (FMLA interference and retaliation) is granted, with prejudice. The motion to dismiss the fourth claim for relief (COBRA violation) is denied.

Plaintiff is granted leave to amend his Title VII exhaustion allegations and his ADA discrimination and retaliation claims, and may correct his COBRA violation allegations, and shall file a Second Amended Complaint on or before January 19, 2024.

IT IS SO ORDERED this 9th day of January, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE